## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

TYMAR DISTRIBUTION, LLC,

                         Plaintiffs,

            v.

MITCHELL GROUP USA, LLC, et al

                         Defendants.

Case No.: 20-cv-719

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS RIVELLE PRODUCTS, INC. AND TIMOTHY MICHAEL FRAILLY'S MOTION TO DISMISS PURUSANT TO <u>FED. R. CIV. P. 12(b)(2), (3), (6)</u>**

Wilson Elser Moskowitz Edelman & Dicker LLP
Attorneys for Defendants
Rivelle Products, Inc. and Timothy Michael Frailly
150 East 42nd Street
New York, New York 10017

11055387v.2

**Table of Contents**

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

ALLEGATIONS IN THE COMPLAINT ......................................................................... 3

    A.     The Relevant Marketplace ................................................................... 3

    B.     The Relevant Amazon Policies ............................................................ 4

    C.     The Relationship Between the Parties ................................................. 5

    D.     Plaintiff's Jurisdictional Allegations ................................................... 7

ARGUMENT ................................................................................................................... 8

    POINT I     THE COMPLAINT DOES NOT PLEAD ANY HORIZONTAL
                    RESTRAINT AND THEREFORE FAILS TO STATE A *PER SE*
                    ANTITRUST LAW VIOLATION ........................................................... 8

    POINT II    PLAINTIFF'S ANTITRUST CLAIMS FAIL BECAUSE
                    PLAINTIFF DOES NOT PROPERLY DEFINE A RELEVENT
                    MARKET OR IDENTIFY ANY ACTIONABLE
                    ANTICOMPETITIVE HARM ................................................................ 9

    POINT III   PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM FAILS TO
                    ALLEGE IMPROPER MOTIVE OR WRONGFUL MEANS ................ 13

    POINT IV   THIS COURT LACKS PERSONAL JURISDICTION OVER
                    FRAILLY ............................................................................................... 16

                 A.    Plaintiff's Complaint Should Be Dismissed Because New
                      York State Law Does Not Provide A Basis For Jurisdiction
                      over Frailly .................................................................................. 18

                      1     Frailly Is Not Subject to General Personal
                            Jurisdiction in New York Under § 301 of the CPLR
                            Because He Is Not "Doing Business" in New York ........ 18

                      2.    Frailly Is Not Subject to "Long Arm Jurisdiction" ........... 20

                            (a)    CPLR § 302(a)(1) Provides No Basis for
                                    Jurisdiction Because This Action Does Not
                                    Arise from Frailly's Business In New York ........ 20

(b)     § 302(a)(2) Provides No Basis for
                Jurisdiction Over Frailly Because He Did
                Not Commit a Tortious Act in New York ........... 22

        (c)     § 302(a)(3) Provides No Basis for
                Jurisdiction Because, inter alia, No New
                York Injury Is Alleged ......................................... 23

        (d)     § 302(a)(4) Provides No Basis for
                Jurisdiction Because Frailly Does Not Own
                Property in New York ........................................... 24

    B.     Due Process Considerations Bar the Exercise of
           Jurisdiction Over Frailly ............................................... 24

CONCLUSION ..................................................................................................... 25

11055387v.2

## <u>Table of Authorities</u>

**Page(s)**

**Cases**

*Advanced Glob. Tech. LLC v. Sirius Satellite Radio, Inc.*,
  15 Misc. 3d 776, 836 N.Y.S.2d 807 (Sup. Ct. N.Y. Cty. Mar. 8, 2007) ................................. 16

*Aero-Bocker Knitting Mills, Inc. v. Allied Fabrics Corp.*,
  387 N.Y.S.2d 635 (1st Dept. 1976) ........................................................................................ 21

*Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich*,
  108 F.3d 1147 (9th Cir. 1997) ............................................................................................... 12

*Anheuser-Busch, Inc. v. G.T. Britts Distrib., Inc.*,
  44 F. Supp. 2d 172 (N.D.N.Y. 1999) ..................................................................................... 11

*Asahi Metal Industry Co., Ltd. v. Sup. Ct. of California*,
  480 U.S. 102 (1987) ............................................................................................................... 25

*Beatie and Osborn LLP v. Patriot Scientific Corp.*,
  431 F.Supp.2d 367 (S.D.N.Y. 2006) ....................................................................... 17, 18, 20

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007) .................................................................................................. 17

*Boehner v. Heise*,
  410 F. Supp. 2d 228 (S.D.N.Y. 2006) ................................................................................... 21

*Bonita Fabrics, Inc. v. Anand*,
  2014 U.S. Dist. LEXIS 13239 (S.D.N.Y. Jan. 29, 2014) ...................................................... 19

*Bradley v. Staubach*,
  2004 U.S. Dist. LEXIS 6584, No. 03 Civ. 4160 (SAS) (S.D.N.Y. Apr. 13, 2004) ................ 22

*Breault v. Heckler*,
  763 F.2d 62 (2d Cir. 1985) .................................................................................................... 19

*Brinkmann v. Adrian Carriers, Inc.*,
  29 A.D.3d 615, 815 N.Y.S.2d 196 (2d Dept. 2006) .............................................................. 19

*Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*,
  441 U.S. 1, 99 S. Ct. 1551, 60 L. Ed. 2d 1 (1979) ............................................................... 12

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ......................................................................................................... 24, 25

11055387v.2

*Business Elecs. Corp. v. Sharp Elecs. Corp.*,
    485 U.S. 717, 99 L. Ed. 2d 808, 108 S. Ct. 1515 (1988) ............................................ 8

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
    547 F.3d 115 (2d Cir. 2008) ...................................................................................... 14

*Chapman v. N.Y. State Div. for Youth*,
    546 F.3d 230 (2d Cir. 2008) ...................................................................................... 11

*City of New York v. Grp. Health*,
    649 F.3d 151 (2d Cir. 2011) ........................................................................................ 9

*Dan-Foam A/S & Tempur-Pedic, Inc. v. Brand Named Beds, LLC*,
    500 F. Supp. 2d 296 (S.D.N.Y. 2007) ...................................................................... 15

*Deep S. Pepsi-Cola Bottling Co. v. PepsiCo, Inc.*,
    No. 88 Civ. 6243 (PKL), 1989 U.S. Dist. LEXIS 4639 (S.D.N.Y. May 2, 1989) .................. 10

*Deer Consumer Prods., Inc. v. Little Grp.*,
    2012 NY Slip Op 52157(U), 37 Misc. 3d 1224(A) (Sup. Ct. N.Y. Cty. Nov. 15, 2012) .......... 16

*Digi-Tel Holdings, Inc. v. Proteq Telecom. (PTE), Ltd.*,
    89 F.3d 519 (8th Cir. 1996) ...................................................................................... 21

*DirecTV Latin Am., LLC v. Park 610, LLC*,
    691 F. Supp. 2d 405 (S.D.N.Y. 2010) ...................................................................... 21

*DiStefano v. Carozzi North Am., Inc.*,
    286 F.3d 81 (2d Cir. 2001) ........................................................................................ 17

*Dobies v. Brefka*,
    273 A.D.2d 776, 710 N.Y.S.2d 438 (3rd Dept. 2000) .............................................. 16

*E & L Consulting, Ltd. v. Doman Indus.*,
    472 F.3d 23 (2d Cir. 2006) ................................................................................. 11, 12

*E.I. du Pont de Nemours & Co.*,
    351 U.S. 377, 76 S. Ct. 994, 100 L. Ed. 2d 1264) .................................................... 10

*El Greco Leather Prods. Co. v. Shoe World, Inc.*,
    806 F.2d 392 (2d Cir. 1986) ...................................................................................... 15

*Elecs. Communs. Corp. v. Toshiba Am. Consumer Prods.*,
    129 F.3d 240 (2d Cir. 1997) ...................................................................................... 13

*Family Internet, Inc. v. Cybernex, Inc.*,
    1999 U.S. Dist. LEXIS 15549, No. 98 Civ. 0637 (S.D.N.Y. Oct. 6, 1999) .............................. 22

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*,
  26 N.Y.2d 280 (1970) ................................................................ 20

*Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*,
  386 F.3d 485 (2d Cir. 2004) ......................................................... 10

*Glens Falls Cement Co. v. Severn Coal Co.*,
  No. 89-CV-1092, 1990 U.S. Dist. LEXIS 1609 (N.D.N.Y. Feb. 14, 1990) ............ 20

*Glob. Disc. Travel Servs., LLC v. TWA*,
  960 F. Supp. 701 (S.D.N.Y. 1997) ................................................. 10

*Griffin-Baez v. Inst. for Responsible Fatherhood*,
  01 Civ. 9096 (LMM), 2002 U.S. Dist. LEXIS 9560 (S.D.N.Y. May 29, 2002) .......... 22

*Grosser v. Commodity Exchange*,
  639 F. Supp. 1293 (S.D.N.Y. 1986) ................................................ 17

*Hamilton v. Town of Hamden*,
  3:08cv164 (PCD), 2008 WL 4999301 (D. Conn. Nov. 19, 2008) ........................ 3

*Helicopteros Nacionales de Colombia v. Hall*,
  466 U.S. 408 (1984) ............................................................... 18

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*,
  138 F. Supp. 2d 449 (S.D.N.Y. 2000) .............................................. 22

*Hughes v. Ester C Co.*,
  330 F. Supp. 3d 862 (E.D.N.Y. 2018) ............................................... 3

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007) ........................................................ 9

*International Shoe Company v. Washington*,
  326 U.S. 310 (1945) ...................................................... 17, 24, 25

*Jacobs v. Felix Block Erben Verlag Fur Buhne Film Und Funk KG*,
  160 F.Supp.2d 722 (S.D.N.Y. 2001) ................................................ 18

*Kahn Lucas Lancaster, Inc. v. Lark Int'l*,
  956 F. Supp. 1131 (S.D.N.Y. 1997) ................................................ 21

*Kernan v. Kurz- Hastings, Inc.*,
  175 F.3d 236 (2d. Cir. 1999) ..................................................... 16

*Kimco Exch. Place Corp. v. Thomas Benz. Inc.*,
  34 A.D.3d 433, 824 N.Y.S.2d 353 (2d Dept. 2006) .................................. 21

v

*Kingsepp v. Wesleyan Univ.*,
   763 F. Supp. 22 (S.D.N.Y. 1991) ........................................................................ 17

*LaMarca v. Pak-Mor Manufacturing Co.*,
   95 N.Y.2d 210 (2000) ........................................................................................ 23

*Laufer v. Ostrow*,
   55 N.Y.2d 305 (1982) ........................................................................................ 19

*Lawrence Wisser and Co., Inc. v. Slender You, Inc.*,
   695 F. Supp. 1560 (S.D.N.Y. 1988) .................................................................... 21

*Leegin Creative Leather Prods. v. PSKS, Inc.*,
   551 U.S. 877, 127 S. Ct. 2705 (2007) ................................................................... 9

*Loberiza v. Calluna Maritime Corp.*,
   781 F.Supp. 1028 (S.D.N.Y. 1992) ..................................................................... 18

*Lugones v. Pete & Gerry's Organic, LLC*,
   19 Civ. 2097 (KPF) 2020 U.S. Dist. LEXIS 30012, 2020 WL 871521
   (S.D.N.Y. Feb. 21, 2020) ...................................................................................... 3

*Merck & Co. v. Mediplan Health Consulting*,
   425 F. Supp. 2d 402 (S.D.N.Y. 2006) ................................................................ 22

*Novartis Animal Health US, Inc. v. LM Connelly & Sons, Pty Ltd.*,
   2005 U.S. Dist. LEXIS 15214 (S.D.N.Y. July 20, 2005) ..................................... 15

*Omega Environmental, Inc. v. Gilbarco, Inc.*,
   127 F.3d 1157 (9th Cir. 1997) ............................................................................ 11

*Papasan v. Allain*,
   478 U.S. 265, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) ....................................... 5

*Phoenix Ancient Art, S.A. v. J. Paul Getty Trust*,
   2018 U.S. Dist. LEXIS 53270 (S.D.N.Y. Mar. 29, 2018) ..................................... 24

*PPX Enters. v. Audiofidelity Enters.*,
   818 F.2d 266 (2d Cir. 1987) ............................................................................... 14

*Premium Mortg. Corp. v. Equifax, Inc.*,
   583 F.3d 103 (2d Cir. 2009) ............................................................................... 14

*Prof. Sound Servs. v. Guzzi*,
   349 F. Supp. 2d 722 (S.D.N.Y. 2004) ................................................................ 13

*Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*,
   812 F. Supp. 387 (S.D.N.Y. 1993) ..................................................................... 11

11055387v.2

*RFP, LLC v. SCVNGR, Inc.*,
    788 F. Supp. 2d 191 (S.D.N.Y. 2011) ................................................................ 14, 16

*Sanderson v. Culligan Int'l Co.*,
    415 F.3d 620 (7th Cir. 2005) .............................................................................. 12

*Scutti Enters. v. Park Place Entm't Corp.*,
    322 F.3d 211 (2d Cir. 2003) ............................................................................... 14

*Shaffer v. Heitner*,
    433 U.S. 186 (1977) ........................................................................................... 25

*Shapiro & Son Bedspread Corp. v. Royal Mills Assocs.*,
    764 F.2d 69 (2d Cir. 1985) ................................................................................. 16

*Skyline Travel, Inc. (NJ) v. Emirates*,
    476 F. App'x 480 (2d Cir. 2012) ....................................................................... 10

*Texaco Inc. v. Dagher*,
    547 U.S. 1, 126 S. Ct. 1276 (2006) ................................................................... 12

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001) ............................................................................... 10

*United Computer Capital Corp. v. Secure Products, LP.*,
    218 F.Supp.2d 273 (N.D.N.Y. 2002) ................................................................ 18

**Statutes**

28 U.S.C. § 1367 ....................................................................................................... 13

28 U.S.C. § 1391(b) .................................................................................................. 13

**Rules**

Fed. R. Civ. P. 12 (b)(2) ...................................................................................... 1, 16

Fed. R. Civ. P. 12 (b)(3) ...................................................................................... 1, 13

Fed. R. Civ. P. 12 (b)(6) ........................................................................................... 1

N.Y. C.P.L.R. § 301 ............................................................................................ 18, 19

N.Y. C.P.L.R. § 302 ............................................................................................ 20, 21

N.Y. C.P.L.R. § 302(a) ............................................................................................. 20

N.Y. C.P.L.R. § 302(a)(1) ................................................................................... 20, 21

11055387v.2

N.Y. C.P.L.R. § 302(a)(2) ................................................................................................. 22

N.Y. C.P.L.R. § 302(a)(3) ............................................................................................ 23, 24

N.Y. C.P.L.R. §§ 301-302 ................................................................................................ 18

N.Y. C.P.L.R. §§ 302(a)(1)-(4) ........................................................................................ 20

11055387v.2

Defendants Rivelle Products, Inc. ("Rivelle") and Timothy Michael Frailly ("Frailly"), by their attorneys, respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Second Amended Complaint filed by Plaintiff  Tymar Distribution LLC ("Plaintiff"), pursuant to Fed. R. Civ. P. 12 (b)(2), (3), (6). While this motion is not submitted on behalf of co-defendant Mitchell Group USA, LLC ("MGU"), the substantive arguments made herein apply with equal force to all defendants.  Rivelle, Frailly, and MGU are hereinafter referred to collectively as "Defendants."

## PRELIMINARY STATEMENT

This lawsuit is an ironic attempt to stifle competition by accusing others of antitrust violations.  Simply put, Plaintiff is upset that it cannot successfully compete in the marketplace and is using the courts to punish its competitors.  In August 2018, Plaintiff reached out to MGU requesting to become an authorized ecommerce distributor of Fair & White ("F&W") beauty products on amazon.com ("Amazon") and offering to provide MGU "brand protection" services. In response to this overture, Plaintiff learned that Rivelle already provided these services to MGU and Rivelle had already been designated MGU's exclusive United States distributor of F&W products on Amazon.  After discovering it had been "beaten to the punch," rather than compete in the market in the ordinary course, Plaintiff chose to publicly criticize Rivelle's performance as MGU's exclusive distributor.  Plaintiff dressed this criticism in the form of the Second Amended Complaint ("Complaint"), which attempts to plead three causes of action arising from Rivelle's efforts as exclusive Amazon distributor of F&W products: (1) *per se* violation of the antitrust laws; (2) rule of reason violation of the antitrust laws; and (3) interference with existing and prospective business relationships under state law.[1]  None of these causes of action is viable.

---

[1] The Complaint states "Plaintiff also sues in…defamation under the common law…" (Cmpl. ¶ 11).  Defendants presume this is a typographical error because Plaintiff previously withdrew its defamation claim due to the expiration

Notably, the Complaint cribs heavily from the Declaration of Chris McCabe submitted in *Johnson v. Does*, 18-cv-00689 (E.D. Va.), which Plaintiff describes as "one of the few cases such as this one in the United States."  (Cmpl. ¶ 2).[2] However, there was no antitrust claim asserted in the *Johnson* case.  *See Johnson v. Does* Complaint, annexed to the Declaration of Stephen Barrett ["Barrett Decl."], as Exhibit B.  It appears that the plaintiff in *Johnson* understood that no cause of action arises under the Sherman or Clayton Acts on these facts.

Plaintiff's antitrust claims fail, among other reasons, because there was no anticompetitive effect experienced in any properly defined marketplace.  There is no allegation that MGU and Rivelle endeavored to fix prices as between competing beauty products.  Nor does the Complaint allege that the Rivelle-MGU agreement impacted the price of beauty products generally.  Instead, Plaintiff's allegations are expressly limited to the impact on the price of a single brand when purchased through a single channel (i.e. F&W beauty products on Amazon). (Cmpl. ¶ 82-84, 104).  Where, as here, the plaintiff fails to properly define its proposed relevant market with reference to all interchangeable substitute products, the relevant market is legally insufficient.

Moreover, exclusive distributorship arrangements are presumptively legal.  And the Complaint does not sufficiently allege that the Rivelle-MGU agreement affected market-wide competition in any way.  For example, MGU could have achieved an identical market result without the aid of Rivelle, thus making the agreement's alleged anticompetitive impact irrelevant.

Likewise, the tortious interference claim fails because Plaintiff does not allege the Defendants utilized any wrongful means to achieve a wrongful purpose. Rather, Rivelle and Frailly

---

of the statute of limitations.  *See* Transcript of the Hearing held before the Honorable Judge Pamela K. Chen on June 4, 2020, a copy of which is annexed to Barrett Decl. as Exhibit A, at 36:19-37:7.  Should the Complaint be read as attempting to state a claim for defamation, that claim should be dismissed for the reasons set forth during the June 4 Hearing, as well as in Rivelle and Frailly's pre-motion letter (DE 22).

[2] Citations to "Cmpl." refer to Plaintiff's Second Amended Complaint, filed June 17, 2020 (DE 30).

had a good faith belief that Plaintiff's sales of F&W products on Amazon were unauthorized and infringing.  Based on that belief, Defendants submitted complaints to Amazon in accordance with Amazon's stated policies.  Amazon reviewed the complaints, determined they were meritorious, and took action against Plaintiff following an investigation.  Merely informing a party of suspected infringement is *per se* nonactionable as tortious interference with business relations.

Finally, to the extent the action is not dismissed in its entirety on substantive grounds, Fraily also seeks dismissal based on lack of personal jurisdiction.[3]  Taken together, the Complaint cannot survive scrutiny and should be dismissed as a matter of law.

## ALLEGATIONS IN THE COMPLAINT[4]

### A.  *The Relevant Marketplace*

Plaintiff describes the relevant market as both the market for "third party ecommerce sales platforms in the United States" and for "[o]nline sales for Fair & White products on amazon.com." (Cmpl. ¶ 94).  The former characterization is plainly inaccurate as none of the parties are alleged to provide an ecommerce sales platform to consumers.[5]  Rather, it is clear that the relevant marketplace is the market for online sales of F&W beauty products on Amazon. *See e.g. id*. ¶ 12

---

[3] While it is generally true that "[a] court facing challenges as to both its jurisdiction over a party and the sufficiency of any claims raised must first address the jurisdictional question," *Lugones v. Pete & Gerry's Organic, LLC*, 19 Civ. 2097 (KPF) 2020 U.S. Dist. LEXIS 30012, 2020 WL 871521, at *2 (S.D.N.Y. Feb. 21, 2020), Rivelle is not moving for dismissal based on jurisdictional grounds. Accordingly, the Court will necessarily need to address the substantive dismissal grounds in any event.  If all claims are dismissed in their entirety against Rivelle, the law of the case doctrine will bar all claims against the remaining defendants. *See generally Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 875 (E.D.N.Y. 2018) (Chen, J.).  Accordingly, if the Court rules in Rivelle's favor on all issues, it need not address the personal jurisdiction question.

[4] Defendants vehemently dispute many of Plaintiff's factual and legal assertions in the Complaint. For the purposes of this Motion, however, Defendants will, as they must, "accept as true . . . all well-plead facts in the [ ] Complaint." *Hamilton v. Town of Hamden*, 3:08cv164 (PCD), 2008 WL 4999301, at *6 (D. Conn. Nov. 19, 2008).

[5] Plaintiff makes several allegations about Amazon's market power, e.g. "Amazon now controls at least 47% of all e-commerce in the United States…" (Cmpl. ¶ 38). *See also e.g.* Cmpl. ¶ 96.  But these allegations are of no moment where Amazon is not a defendant and Plaintiff does not allege that Amazon exercises monopoly power. Similarly, Plaintiff alleges that Amazon's relevant marketplace is the market "of online retail sales." (*Id.* ¶ 41).  But that is plainly not the market for competition at issue in the Complaint as it concerns Plaintiff and Defendants.

(alleging Defendants' actions resulted in "supra competitive pricing" for F&W products); ¶ 50 (alleging Plaintiff was coerced to "refrain from competing with defendants in the F&W space on Amazon"), ¶ 82 ("only issue…was…[Plaintiff's] marketing of F&W products on Amazon"); ¶ 83 (describing the market as "the F&W space"); ¶ 84 (describing the effect on competition as "price movements on three popular F&W products"); ¶ 89 (complaining of exclusionary practices designed to exclude "plaintiff from competing…to sell F&W products").

## B. *The Relevant Amazon Policies*

All Amazon users agree to Amazon's Terms of Service when using the platform. (Cmpl. ¶ 34). "Amazon's policies expressly prohibit third party sellers from violating the intellectual property rights of others" and if a seller violates these policies "Amazon may block the listing or, in certain circumstances, terminate the third-party seller." (*Id*. ¶ 36). Importantly, however, "[b]efore it can act, Amazon must, according to its own written policies, determine whether the reported item or items do actually infringe on another seller's rights." *Id*. "To do so, Amazon represents to the public that it conducts an investigation…[and] requires evidence of infringement that it is asked to take down…" *Id*. While Plaintiff complains that Amazon is lax is adhering to its own policies, the Complaint is clear that Amazon—and Amazon alone—is responsible for determining infringement and removing a third-party seller from its platform. *Id*. ¶¶ 36-37. As Plaintiff aptly summarizes, "Amazon is generally permitted to unilaterally restrict any seller from competing in the Marketplace and take such other unilateral action as Amazon in its business judgment deems appropriate…" *Id*. ¶ 43. In fact, pursuant the Business Solutions Agreement between Amazon and Plaintiff, Amazon is permitted to "terminate plaintiff's selling privilege as a seller for any reason or for no reason at all." *Id*. ¶ 49.

11055387v.2

C.  *The Relationship Between the Parties*

Plaintiff is a "third party seller on Amazon" and alleges that its business is "sourcing products at wholesale, from an authorized distributor of a manufacturer, or from the manufacturer itself, or from a downstream purchaser, and selling it at an enhanced, retail price point online, but often at a cheaper price than other sellers are selling it, thus benefiting customers, who get authentic product at a discount."  (Cmpl. ¶¶ 4, 25).  In the context of this business, Plaintiff "listed approximately 300 brand names on amazon.com," including F&W beauty products.  (*Id*. ¶ 50).

Notably, Plaintiff admits that it was selling "grey market" F&W goods, which Plaintiff describes as product "bought and sold outside the manufacturer's authorized trading channels."[6] (*Id*. ¶ 44).  Plaintiff concedes that unauthorized "grey market activities…threaten the profits of manufacturers…" (*Id*. ¶ 6).  Plaintiff also alleges that it sourced some of its F&W products directly from MGU, which is "the exclusive United States distributor of certain French-made personal care products including its F&W line of creams, soaps, gels, etc."  (*Id*. ¶ 28; *see also id*. ¶¶ 8, 51, 60-61).

Plaintiff alleges that Rivelle is a mail order source of health and beauty products, which also offers "brand protection services" and "e-commerce marketplace services" to third parties. (*Id*. ¶¶ 26, 54).   One of Rivelle's so-called "brand protection" clients was MGU. (*Id*. ¶ 66). Plaintiff describes "brand protection services" as assistance in "knocking off unwanted sellers." (*Id*. ¶ 3).  For a more apt description, Plaintiff admits that it offered "to assist MGU [to] identify

---

[6] While Plaintiff alleges that, according to "Amazon's policies," "it is completely lawful for third-party sellers to purchase grey market goods and sell them on Amazon," Amazon's policies are not coextensive with federal law. The Court need not accept Plaintiff's conclusory legal statements as true. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

and act against real counterfeiters…" but was rejected because Rivelle already provided these services in its "existing role as brand protector." (*Id*. ¶ 21).

Despite this acknowledged relationship between MGU and Rivelle, Plaintiff baldly claims that Rivelle competed with MGU for sales of F&W products on Amazon (*id*. ¶¶ 16-17), while simultaneously conceding that, at all relevant times, Rivelle was the "exclusive FBA [fulfilled by Amazon] distributor on Amazon of some or all items in [MGU's] line of approximately 50 Fair & White products listed for sale on the Amazon platform." (*Id*. ¶¶ 22, 26). Importantly, Plaintiff expressly admits that MGU "appoint[ed]" Rivelle "as its Amazon exclusive seller". (*Id*. ¶ 41). *See also id.* ¶¶ 58, 95 (Rivelle was "MGU'S exclusive Amazon seller").

In other words, Rivelle was the only entity contractually authorized to sell F&W products on Amazon and, in exchange, Rivelle was responsible for ensuring that unauthorized sellers and counterfeiters did not dilute the F&W brand on Amazon. In this role, Rivelle submitted intellectual property complaints to Amazon—using MGU's proprietary email domain—regarding Plaintiff's listings for grey market F&W goods. (*Id*. ¶¶ 57, 62, 64, 68, 72, 74). Plaintiff alleges that these complaints contained false allegations of counterfeiting, resulting in the suspension of Plaintiff's Amazon account. (*Id*. ¶¶ 10, 68, 71, 90, 98). For example, at least one such complaint allegedly accused Plaintiff of counterfeiting because its sales of grey market goods "did not convey" the manufacturer's warranty attendant to goods sourced through authorized channels. (*Id*. ¶ 62). In response to these complaints, Amazon removed Plaintiff's disputed listings. (*Id*. ¶¶ 68-69, 72). When Plaintiff persisted, Amazon ultimately chose to suspend Plaintiff's account on October 18, 2018 in accordance with Amazon's own policies. (*Id*. ¶ 79). Plaintiff alleges that Amazon's investigations of intellectual property complaints are inconsistent in general (*id*. ¶ 1), and Plaintiff implies that Amazon did a substandard investigation in this case specifically. *See e.g. id*. ¶ 70.

Plaintiff retained New York attorneys Rosenbaum & Fumalaro to formulate a response to the intellectual property complaints, and the parties negotiated a potential resolution of the ongoing complaints from "June 25 to October 2, 2018." (*Id*. ¶ 67). To resolve the dispute, Plaintiff ultimately agreed "to refrain from competing with defendant in the F&W space on Amazon" (*id*. ¶ 50) in exchange for Defendants' retraction of the intellectual property complaints and MGU's grant of permission to allow Plaintiff to sell F&W products "on other outlets outside of Amazon." (*Id*. ¶¶ 80-81). Plaintiff's Amazon account was thereafter reinstated after an 18-day suspension period. (*Id*. ¶ 112).

### D. *Plaintiff's Jurisdictional Allegations*

As alluded to above, the parties engaged in ongoing settlement discussions between June and October 2018. (Cmpl. ¶ 67). The only New York-based acts at issue were Defendants' settlement negotiations with Plaintiff's chosen counsel, who happened to be located in Nassau County in New York State. (*Id*.) Plaintiff expressly alleges that Rivelle's telephonic "communication with *plaintiff's* New York counsel in Nassau County, during August–October 2018" is the only jurisdictional predicate. (*Id*. ¶ 15 (emphasis added)). In particular, Frailly, on behalf of Rivelle, allegedly "had discussions and negotiations with plaintiff's counsel, Rosenbaum & Fulmalaro, specifically addressing plaintiff's initiative to be permitted to sell Fair & White products an amazon.com and provide other services to MGU." (*Id*. ¶ 20). This allegation was more fully developed during jurisdictional discovery.

In point of fact, Frailly never had any oral communications with Plaintiff's counsel— telephonic or otherwise—that referenced Plaintiff. *See* Rivelle's Response to Plaintiff's First Set of Interrogatories, dated July 24, 2020, annexed to the Barrett Decl. as Exhibit C. Moreover, Frailly's only written response to Plaintiff's proposal "to be permitted to sell Fair & White products

7

on amazon.com and provide other services to MGU" (Cmpl. ¶ 20) merely advised Plaintiff's counsel of a potential conflict of interest.  *See* MG-0059—MG-0062, annexed to the Barrett Decl. as Exhibit D.[7]  Said conflict was created by counsel's business solicitation to MGU on behalf of Plaintiff, coupled with counsel's prior representation of Rivelle and Rivelle's status as MGU's exclusive distributor of F&W products.  (Cmpl. ¶¶ 41, 58, 78, 95).

Contrary to the allegations in the Complaint, jurisdictional discovery conclusively established that Frailly never "rejected" Plaintiff's "offer of lawful brand protection" in a "telephonic discussion" with MGU's attorneys.  (*Id*. ¶ 21).  While Plaintiff claims that "the decision to reject plaintiff's request was in furtherance of the conspiracy's goal of supra competitive pricing of Fair & White products on the Amazon Marketplace" (*id*.), Plaintiff's request to contract with MGU was actually foreclosed months earlier when Rivelle became the exclusive distributor of F&W products on Amazon in the United States.  Plaintiff does not (because it cannot) allege that Rivelle and MGU were required to terminate their exclusive distribution agreement in favor of an alternative distribution agreement proposed by Plaintiff.

## ARGUMENT

## POINT I

### THE COMPLAINT DOES NOT PLEAD ANY HORIZONTAL RESTRAINT AND THEREFORE FAILS TO STATE A *PER SE* ANTITRUST LAW VIOLATION

"Restraints imposed by agreement between competitors have traditionally been denominated as horizontal restraints, and those imposed by agreement between firms at different levels of distribution as vertical restraints." *Business Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730, 99 L. Ed. 2d 808, 108 S. Ct. 1515 (1988). While Plaintiff alleges that Rivelle and MGU

---

[7] Pursuant to the parties' Protective Order (DE 29), Exhibit D is filed under seal pending a resolution of the contemporaneously filed Motion to Seal.

are in a horizontal relationship as competitors for the sale of beauty supplies (Cmpl. ¶ 53), there is no allegation that Defendants entered into any agreement to restrain the broader beauty supply market.  Rather, the only alleged restraints on trade relate to the pricing of F&W products, which Plaintiff concedes Rivelle sourced vertically from MGU. (*Id*. ¶¶ 12, 50, 58, 82-83, 89, 94-95). Accordingly, only an alleged vertical restraint is at issue in the Complaint.

In 2007, the Supreme Court determined that all manufacturer-imposed vertical price programs should be evaluated exclusively using a rule of reason approach. According to the Court, "[a]bsent vertical price restraints, the retail services that enhance interbrand competition might be underprovided. This is because discounting retailers can free ride on retailers who furnish services and then capture some of the increased demand those services generate." *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 890, 127 S. Ct. 2705 (2007). Thus, Plaintiff's first cause of action seeking to impose *per se* antitrust liability must be dismissed as a matter of law.

## POINT II

### PLAINTIFF'S ANTITRUST CLAIMS FAIL BECAUSE PLAINTIFF DOES NOT PROPERLY DEFINE A RELEVENT MARKET OR IDENTIFY ANY ACTIONABLE ANTICOMPETITIVE HARM

To state an antitrust claim, a complaint must allege enough factual matter to plausibly suggest the parties entered into an anticompetitive agreement. *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007).  An antitrust complaint must also allege a relevant product market in which the anticompetitive effects of the challenged activity can be assessed.  *City of New York v. Grp. Health*, 649 F.3d 151, 155 (2d Cir. 2011).  Here, Plaintiff fails to allege a proper market or any unlawful anticompetitive effect.

Plaintiff defines the relevant market as "[o]nline sales for Fair & White products on amazon.com." (Cmpl. ¶ 94; *see also id*. ¶¶ 12, 50, 82-83, 89). But "the law is clear that the

9

distribution of a single brand, like the manufacture of a single brand, does not constitute a legally cognizable market." *Glob. Disc. Travel Servs., LLC v. TWA*, 960 F. Supp. 701 (S.D.N.Y. 1997) (quoting *Deep S. Pepsi-Cola Bottling Co. v. PepsiCo, Inc.*, No. 88 Civ. 6243 (PKL), 1989 U.S. Dist. LEXIS 4639, *8 (S.D.N.Y. May 2, 1989)). "Where, as here, the complaint 'limit[s] a product market to a single brand, franchise, institution, or comparable entity that competes with potential substitutes' or fails to provide a 'plausible explanation as to why a market should be limited in a particular way,' the complaint is properly dismissed." *Skyline Travel, Inc. (NJ) v. Emirates*, 476 F. App'x 480, 481 (2d Cir. 2012) (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001)).

Here, despite Rivelle's designation as MGU's exclusive Amazon distributor for F&W beauty products, consumers were still able to seek F&W products from other sources through sales channels other than Amazon. Or consumers could seek substitute beauty products within the Amazon marketplace. Or they could seek substitute beauty products outside the Amazon marketplace. There is no allegation that MGU and Rivelle endeavored to manipulate prices for any other competing beauty products. Nor does the Complaint allege that the Rivelle-MGU agreement impacted the price of beauty products generally. The Complaint does not even allege that the agreement affected F&W beauty product prices in general. Rather, Plaintiff's allegations are expressly limited to the impact on the price of a single brand when purchased through a single channel (i.e. F&W beauty products on Amazon). (Cmpl. ¶ 82-84, 104). This narrow allegation is insufficient to state a claim.

The relevant market must be defined "as all products 'reasonably interchangeable by consumers for the same purposes,' because the ability of consumers to switch to a substitute restrains a firm's ability to raise prices above the competitive level." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 496 (2d Cir. 2004) (quoting *E.I. du Pont de Nemours & Co.*, 351

U.S. 377 at 395, 76 S. Ct. 994, 100 L. Ed. 2d 1264). "[W]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient." *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008). Plaintiff's antitrust claims should be dismissed for this reason alone.

Even if Plaintiff defined a proper marketplace, e.g. the market for beauty supplies generally, the Rivelle-MGU agreement is plainly lawful. "[E]xclusive distributorship arrangements," like the one at issue here, "are presumptively legal." *E & L Consulting, Ltd. v. Doman Indus.*, 472 F.3d 23, 30 (2d Cir. 2006).; s*ee also Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp. 387, 392 (S.D.N.Y. 1993) ("An exclusive distributorship agreement between a manufacturer and a distributor causing harm to another distributor is not, standing alone, sufficient to show antitrust injury. . . . The intent to harm a particular competitor is not actionable, even if a distributor-competitor is put out of business.").

"'Exclusive dealing arrangements imposed on distributors rather than end-users are generally less cause for anticompetitive concern' because there may be other avenues available to competing manufacturers to distribute their product." *Anheuser-Busch, Inc. v. G.T. Britts Distrib., Inc.*, 44 F. Supp. 2d 172, 176 (N.D.N.Y. 1999) (quoting *Omega Environmental, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997)). Where, as here, "competitors can reach the ultimate consumers of the product by employing existing or potential alternative channels of distribution, it is unclear whether such restrictions foreclose from competition any part of the relevant market." *Id*. Plaintiff does not even attempt to allege that competitors in the beauty supply market are unable to compete with F&W's products.

Moreover, the alleged agreement had no anticompetitive effect because MGU could have achieved the same result without the aid of Rivelle. MGU is free to directly distribute F&W products on Amazon and may enforce its rights against potential infringers unassisted.  To be sure, if MGU wanted to scour Amazon and send takedown notices to all unauthorized sellers in order to maintain its market position, it could do so without violating antitrust law. Even false statements made in the course of that policing effect would be nonactionable as an antitrust violation. *See Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 623 (7th Cir. 2005)("False statements about a rival's goods do not curtail output in either the short or long run"); *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich*, 108 F.3d 1147, 1152 (9th Cir. 1997)("We would go further and suggest that claims [based on false statements about rivals] should presumptively be ignored.")(citations omitted).   Thus, outsourcing that policing function to an exclusive distributor, like Rivelle, cannot transform this otherwise non-infringing conduct into a violation.  "[B]ecause the alleged single source and price increase, even if monopolistic, is something [defendant] can achieve without the aid of a distributor," it is not unlawful to achieve that result with the aid of a distributor. *E & L Consulting.*, 472 F.3d at 30.

In fact, "the pricing policy challenged here amounts to little more than price setting by a single entity…and not a pricing agreement between competing entities with respect to their competing products." *Texaco Inc. v. Dagher*, 547 U.S. 1, 6, 126 S. Ct. 1276 (2006).  As discussed above, there is no allegation that MGU and Rivelle attempted to manipulate prices across a spectrum of competing products.  Rather, it is alleged that MGU asked Rivelle to stand in its shoes and enforce its intellectual property rights against infringers unlawfully undercutting its prices. Therefore, even if the agreement might be interpreted as "price fixing in a literal sense, it is not price fixing in the antitrust sense." *Id*. (citing *Broadcast Music, Inc. v. Columbia Broadcasting*

*System, Inc.*, 441 U.S. 1, 9, 99 S. Ct. 1551, 60 L. Ed. 2d 1 (1979) ("When two partners set the price of their goods or services they are literally 'price fixing,' but they are not per se in violation of the Sherman Act").

In other words, the alleged agreement had absolutely no market impact. "Without any allegation as to how market-wide competition will be affected, the complaint fails to allege a claim on which relief may be granted." *Elecs. Communs. Corp. v. Toshiba Am. Consumer Prods.*, 129 F.3d 240, 245 (2d Cir. 1997).

## POINT III

## PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM FAILS TO ALLEGE IMPROPER MOTIVE OR WRONGFUL MEANS

As a threshold matter, Plaintiff's state law claim should be dismissed following dismissal of the antitrust claims because this Court will lose federal question jurisdiction and proper venue over them.  While Plaintiff also alleges diversity jurisdiction over the state law claim (Cmpl. ¶ 14), this Court will not have proper venue if the Federal claims are dismissed.  Pursuant to 28 U.S.C. § 1391(b), venue is only proper in a district "in which any defendant resides," or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…"  None of the Defendants reside in New York.  (Cmpl. ¶¶ 26, 28; Frailly Decl. ¶ 2). Meanwhile, Plaintiff is a resident of Rhode Island (Cmpl. ¶ 4), and the only "events" that took place in New York were settlement communications initiated by Plaintiff's prior counsel, who happened to be located in New York.  (Cmpl. ¶ 15).  Accordingly, if the action is premised solely on diversity jurisdiction, it will be improperly venued in New York—warranting dismissal pursuant to Fed. R. Civ. P. 12(b)(3).  Moreover, upon dismissal of the Federal claims, the Court need not consider the remaining state law claim pursuant to 28 U.S.C. § 1367, and the Court therefore should decline to exercise supplemental jurisdiction.  *See Prof. Sound Servs. v. Guzzi*, 349 F. Supp. 2d 722, 736

(S.D.N.Y. 2004) (declining to exercise supplemental jurisdiction over state law claims where federal claims dismissed).

Turning to the substantive flaws in Plaintiff's state law cause of action, a claim of tortious interference requires a showing of "interference with business relations existing between the [claimant] and a third party, either with the sole purpose of harming the [claimant] or by means that are dishonest, unfair or in any other way improper." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 269 (2d Cir. 2008) (citation omitted). If there are "no allegations in the complaint capable of supporting a reasonable inference that any . . . defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means, then the claim should be dismissed." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 107 (2d Cir. 2009) (citation omitted).

As to the first prong, if Defendants' alleged "'interference [was] intended, at least in part, to advance [their] own competing interests,' then there was no 'wrongful purpose.'" *RFP, LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2011) (quoting *PPX Enters. v. Audiofidelity Enters.,* 818 F.2d 266, 269 (2d Cir. 1987)). Here, Plaintiff affirmatively alleges that Defendants' actions were motivated by a desire to benefit their own business interests, thereby vitiating the claim. *See* Cmpl. ¶ 108 (alleging Defendants acted with the "purpose of suppressing competition").

With respect to the second prong, "[t]he wrongful means requirement is similarly demanding." *SCVNGR, Inc.*, 788 F. Supp. 2d at 197. Plaintiff must plead acts of "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." *Scutti Enters. v. Park Place Entm't Corp.*, 322 F.3d 211, 216 (2d Cir. 2003) (citation omitted). At most, Plaintiff alleges that Defendants made misrepresentations to Amazon that Plaintiff was "counterfeiting." (Cmpl. ¶ 108-09). But this is insufficient to state a claim.

14

As a matter of law in this Circuit, a "counterfeit" is any good marked with a trademark and distributed without the manufacturers' consent—even if the good did, in fact, originate from the manufacturer. *See El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 396 (2d Cir. 1986). Here, Plaintiff freely admits that it is a purveyor of "grey market goods," which Plaintiff describes as product "bought and sold outside the manufacturer's authorized trading channels." (Cmpl. ¶ 44). "[T]he sale of grey goods violates the Lanham Act when the goods (1) are not intended to be sold in the United States, and (2) are materially different from the authentic goods that are authorized for sale in the United States market." *Novartis Animal Health US, Inc. v. LM Connelly & Sons, Pty Ltd.*, 2005 U.S. Dist. LEXIS 15214, *11 (S.D.N.Y. July 20, 2005). Plaintiff's goods were materially different because they were not covered by a manufacturer's warranty when sold by Plaintiff.  (Cmpl. ¶¶ 62, 82). Accordingly, Plaintiff's goods were counterfeits—as that legal term of art is used. *See Dan-Foam A/S & Tempur-Pedic, Inc. v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 314 (S.D.N.Y. 2007) (difference in warranty protection considered material).

At a minimum, Rivelle and Frailly had a good faith basis to accuse Plaintiff of trafficking in infringing grey market goods. Rivelle was "MGU'S exclusive Amazon seller." (Cmpl. ¶¶ 58, 95).  Accordingly, by contract, no other parties were authorized to deal in F&W goods on Amazon in the United States. Upon encountering unauthorized F&W goods on Amazon, it was a reasonable presumption that the goods were illicitly imported or counterfeited.  Rivelle and Frailly reported their suspicions to Amazon, and Amazon took an adverse action against Plaintiff following its own investigation.  (Cmpl. ¶¶ 36-37, 68-69, 72, 79).

Defendants' "actions taken to inform others that they may be participating in infringement of [an intellectual property] right, and might face legal consequences for that infringement, are not

tortious interference." *SCVNGR*, 788 F. Supp. 2d at 197-98 (citing *Shapiro & Son Bedspread Corp. v. Royal Mills Assocs.*, 764 F.2d 69, 75 (2d Cir. 1985)). Plaintiff's claim therefore fails.

Finally, even if Plaintiff could allege wrongful means, Defendants' actions were not the proximate cause of any harm. The Complaint is clear that Amazon—and Amazon alone—is responsible for determining infringement and removing a third-party seller from its platform. (Cmpl. ¶¶ 36-37). Plaintiff alleges that Amazon did a substandard investigation, but nevertheless it was Amazon that determined that Plaintiff's account should be suspended. As such, Amazon was the sole proximate cause of Plaintiff's alleged harm.

Where, as here, the alleged interference did not cause "injury to the business relationship," Plaintiff cannot state a claim. *Advanced Glob. Tech. LLC v. Sirius Satellite Radio, Inc.,* 15 Misc. 3d 776, 779, 836 N.Y.S.2d 807 (Sup. Ct. N.Y. Cty. Mar. 8, 2007). Stated differently, because Defendants' alleged actions caused only "injury to reputation," a claim for tortious interference cannot lie and should be dismissed. *Dobies v. Brefka*, 273 A.D.2d 776, 778, 710 N.Y.S.2d 438 (3rd Dept. 2000); *see also Deer Consumer Prods., Inc. v. Little Grp.*, 2012 NY Slip Op 52157(U), *15, 37 Misc. 3d 1224(A) (Sup. Ct. N.Y. Cty. Nov. 15, 2012).

## POINT IV

## THIS COURT LACKS PERSONAL JURISDICTION OVER FRAILLY

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that a defendant may move to dismiss a complaint in advance of filing an answer if the defendant contends the court lacks personal jurisdiction. In a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 2d. Cir. 1999) (internal citations omitted). In this situation, a

court may consider documents beyond the pleadings. *DiStefano v. Carozzi North Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

While the Clayton Act's "authorization of service outside the state has been interpreted as authorizing federal courts to exercise nationwide personal jurisdiction over corporate antitrust defendants," the statute is "narrowly construed" and "exclude[s] non-corporate defendants" *Kingsepp v. Wesleyan Univ.*, 763 F. Supp. 22, 24-25 (S.D.N.Y. 1991). Accordingly, Plaintiff must find an independent basis for asserting personal jurisdiction over Frailly under New York's Long Arm Statute. *See Grosser v. Commodity Exchange*, 639 F. Supp. 1293, 1305-1306 (S.D.N.Y. 1986).

To determine whether personal jurisdiction exists over an out-of-state defendant, like Frailly, a district court engages in a two-part analysis. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243-44 (2d Cir. 2007). First, a court looks to whether personal jurisdiction over the defendant exists under New York state law. *Id.* at 244; *Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F.Supp.2d 367, 386 (S.D.N.Y. 2006). If a court finds personal jurisdiction exists under the laws of the state, it must next determine whether or not the assertion of jurisdiction in the circumstances of the case will violate constitutional requirements of due process. *Id.* The court should find that principles of due process are satisfied only if jurisdiction is asserted over a non-resident that has "certain minimum contacts with the forum such that the maintenance of a suit would not offend traditional notions of fair play and substantial justice." *International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945).

Here, neither New York State law nor Due Process considerations allows this Court to exercise jurisdiction over Frailly, and the Complaint against him should be dismissed.

11055387v.2

A.   *Plaintiff's Complaint Should Be Dismissed Because New York State Law Does Not Provide A Basis For Jurisdiction over Frailly*

There are two types of jurisdiction that a court may exercise over a defendant: general and specific.  *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 411 (1984). These two types of jurisdiction are reflected under New York jurisdiction statutes.  *See* N.Y. C.L.P.R. §§ 301-302; *Beatie and Osborn LLP*, 431 F.Supp.2d at 386.  Neither form of jurisdiction applies to Frailly in the instant matter.

1.   Frailly Is Not Subject to General Personal Jurisdiction in New York Under § 301 of the CPLR Because He Is Not "Doing Business" in New York

N.Y. C.P.L.R. § 301 is New York's general jurisdiction statute, and provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  N.Y. C.P.L.R. § 301. A non-resident defendant may be subject to personal jurisdiction under Section 301 only if he is "doing business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Loberiza v. Calluna Maritime Corp.*, 781 F.Supp. 1028, 1030  (S.D.N.Y. 1992).  New York courts emphasize that the Section 301 "doing business" test is a stringent one. *Jacobs v. Felix Block Erben Verlag Fur Buhne Film Und Funk KG*, 160 F.Supp.2d 722, 731 (S.D.N.Y. 2001).

New York courts look to the nature and quality of New York contacts, rather than the amount of contacts, to determine whether there has been the kind of purposeful activity which should confer jurisdiction under Section 301.  *See United Computer Capital Corp. v. Secure Products, LP.*, 218 F.Supp.2d 273, 277 (N.D.N.Y. 2002)  The courts focus on factors such as (1) the existence of an office in the state; (2) the solicitation of business in the state; (3) the presence of bank accounts and other property in the state; (4) the authority to do business in New York as a

foreign corporation, and (5) the presence of employees in the state. *Breault v. Heckler*, 763 F.2d 62, 64 (2d Cir. 1985).

Applying these factors, the Court should find that there is no "general" jurisdiction over Frailly in New York. Frailly does not own property in New York. (Frailly Decl. ¶ 3). Frailly does not maintain a bank account or pay taxes in New York. (*Id*. ¶ 4). Frailly does not have an office in New York. (*Id*. ¶ 5). Frailly does employ individuals in the state of New York. (*Id*. ¶ 6). Frailly does not solicit business in his individual capacity in New York. (*Id*. ¶ 7). Frailly does not have an agent for service of process in New York. (*Id*. ¶ 8). Frailly does not have a New York telephone number. (*Id*. ¶ 9).

Although Frailly's business activities on behalf of his employer may infrequently touch New York, the overwhelming majority of his business activities occur in California, the state of his residence. (*Id*. ¶¶ 10-12). This is insufficient to establish jurisdiction over him in his individual capacity. *See Bonita Fabrics, Inc. v. Anand*, 2014 U.S. Dist. LEXIS 13239, *14-*15 (S.D.N.Y. Jan. 29, 2014) ("for jurisdictional purposes, the acts of corporate officers and directors in their official capacities are the acts of the corporation exclusively and are thus not material for purposes of establishing minimum contacts as to the individuals.").

Moreover, even if a corporate defendant is subject to jurisdiction in New York (which Plaintiff has not sufficiently alleged), an individual employee of that corporate defendant is not subject to general jurisdiction under Section 301 "unless he is doing business in [the State of New York] individually." *Laufer v. Ostrow*, 55 N.Y.2d 305, 313 (1982). "An individual cannot be subject to jurisdiction under CPLR § 301 unless he is doing business in New York as an individual rather than on behalf of a corporation." *Brinkmann v. Adrian Carriers, Inc.*, 29 A.D.3d 615, 617, 815 N.Y.S.2d 196 (2d Dept. 2006). There is no such allegation here.

2.  Frailly Is Not Subject to "Long Arm Jurisdiction"

Under Section 302 of the CPLR, New York's Long-Arm Statute (codified at N.Y. C.P.L.R. § 302(a)), the exercise of specific jurisdiction over non-resident defendants is permissible only in four specific instances.  *See* N.Y. C.P.L.R. § 302(a)(1)-(4). None of the four bases for jurisdiction exist over Frailly.

(a)  *CPLR § 302(a)(1) Provides No Basis for Jurisdiction Because This Action Does Not Arise from Frailly's Business In New York*

Jurisdiction is only proper under Section 302(a)(1) when: (1) the defendant has transacted business in New York; and (2) the cause of action arises out of the subject matter of the transacted business.  *Beatie and Osborne LLP*, F.Supp.2d at 387. By contrast, a non-resident defendant is not subject to personal jurisdiction under Section 302(a)(1) when that defendant neither solicits business in New York nor enters New York to engage in business dealings with the plaintiff. *See Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 284-85 (1970).

Here, Plaintiff's causes of action do not arise from any business transacted by Frailly in New York in his individual capacity. At most, Plaintiff alleges that Frailly engaged "with plaintiff's New York counsel in Nassau County" on behalf of his employer, Rivelle, to participate in settlement discussions regarding the instant dispute.  (Cmpl. ¶¶ 15, 20-21).  Defendants are unable to locate a single case in which personal jurisdiction was premised on a defendant's pre-suit settlement negotiations with a plaintiff's selected counsel. If jurisdiction could be conferred on such a basis, a plaintiff would need only retain counsel in the desired jurisdiction, have counsel send a pre-suit letter, and await a response.  Surely this cannot pass muster, and such a rule would only serve to frustrate pre-suit negotiations by putting prospective defendants in fear of engaging in any pre-suit settlement discussions. *See Glens Falls Cement Co. v. Severn Coal Co.*, No. 89-CV-1092, 1990 U.S. Dist. LEXIS 1609 (N.D.N.Y. Feb. 14, 1990) ("settlement negotiations…will

not suffice to convey personal jurisdiction"); *see also Digi-Tel Holdings, Inc. v. Proteq Telecom. (PTE), Ltd.*, 89 F.3d 519, 524-25 (8th Cir. 1996) ("[C]ourts have hesitated to use unsuccessful settlement discussions as contacts for jurisdictional purposes" because "[g]iving jurisdictional significance to such activities may work against public policy by hindering the settlement of claims.").

Furthermore, a handful of emails or telephone calls, standing alone, are insufficient to establish jurisdiction over an individual defendant. *See DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010) ("courts applying New York law have declined to extend jurisdiction over defendants simply on the basis of telephone calls and other communications sent to New York") (collecting cases); *Boehner v. Heise*, 410 F. Supp. 2d 228, 236 (S.D.N.Y. 2006); *Kahn Lucas Lancaster, Inc. v. Lark Int'l*, 956 F. Supp. 1131, 1135 (S.D.N.Y. 1997) ("contacts through telephone calls, the mail, and by facsimile, are usually insufficient to confer personal jurisdiction"); *see also Kimco Exch. Place Corp. v. Thomas Benz. Inc.*, 34 A.D.3d 433, 434, 824 N.Y.S.2d 353 (2d Dept. 2006) ("The defendants' acts of faxing the executed contracts to New York and of making a few telephone calls do not qualify as purposeful acts constituting the transacting of business."); *C-Life Group Ltd. v. Generra Co.*, 235 A.D.2d 267, 267, 652 N.Y.S.2d 41, 41 (1st Dept. 1997).

"While physical presence is not a prerequisite to constitute transaction of business under CPLR 302, with few exceptions the Court of Appeals has not upheld jurisdiction in its absence." *Aero-Bocker Knitting Mills, Inc. v. Allied Fabrics Corp.*, 387 N.Y.S.2d 635, 648-49 (1st Dept. 1976); *see also Lawrence Wisser and Co., Inc. v. Slender You, Inc.*, 695 F. Supp. 1560, 1562 (S.D.N.Y. 1988) ("New York courts have consistently refused to sustain § 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York.").

21

Here, there are no allegations that Frailly, as an individual, ever transacted any business in New York whatsoever.  Frailly's purported settlement communications on behalf of Rivelle and MGU are insufficient to maintain personal jurisdiction over him individually. "The mere fact that a corporation [may be] subject to jurisdiction…does not mean that individual officers may be hauled before New York courts without any showing that the individuals themselves maintained a presence or conducted business in New York." *Griffin-Baez v. Inst. for Responsible Fatherhood*, 01 Civ. 9096 (LMM), 2002 U.S. Dist. LEXIS 9560, *6 (S.D.N.Y. May 29, 2002) (quoting *Family Internet, Inc. v. Cybernex, Inc.*, 1999 U.S. Dist. LEXIS 15549, No. 98 Civ. 0637, *4 (S.D.N.Y. Oct. 6, 1999)).   Rather, when suing individuals, "[p]laintiffs still must show either that [defendant's] own contacts with the state satisfy the statute's requirements or that the Court's jurisdiction over [the corporation] should be imputed to [defendant] under an agency theory." *Merck & Co. v. Mediplan Health Consulting*, 425 F. Supp. 2d 402, 419 (S.D.N.Y. 2006) (internal quotations omitted).  The Complaint fails to offer any allegations sufficient to meet this burden. *See Bradley v. Staubach*, 2004 U.S. Dist. LEXIS 6584, No. 03 Civ. 4160 (SAS), *5 (S.D.N.Y. Apr. 13, 2004)(finding no basis for jurisdiction over CEO defendant where complaint contained nothing but conclusory allegations as to his acts in an individual capacity); *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456-57 (S.D.N.Y. 2000) (finding personal jurisdiction over sole proprietorship but dismissing complaint against individual sole proprietor for insufficient jurisdictional allegations).

(b)    *§ 302(a)(2) Provides No Basis for Jurisdiction Over Frailly Because He Did Not Commit a Tortious Act in New York*

Section 302(a)(2) is inapplicable because Frailly did not commit, and is not alleged to have committed, a tortious act within the state of New York.  Any allegedly tortious acts by Rivelle,

e.g. tortious interference with business relationship, would have occurred outside of New York and cannot be imputed to Fraily as an individual in any event.

> (c)     § 302(a)(3) Provides No Basis for Jurisdiction Because, inter alia, No New York Injury Is Alleged

Fraily may only be subject to jurisdiction in New York for an alleged tortious act committed outside the state if he (i) regularly does business or engages in any other persistent course of conduct in the state; or (ii) expects or should reasonably expect his acts to have consequences in the state **and** derives substantial revenue from interstate or international commerce.  *See* N.Y. C.P.L.R. § 302(a)(3).  Neither of these sub-prongs apply to Fraily who conducts his regular business in California. (Fraily Decl. ¶¶ 7, 10-12).

Regarding the first prong, Fraily does not engage in regular business or any other persistent course of conduct within the state of New York.  (*See* Point IV.A.1, *supra*, discussing the lack of general jurisdiction).  The second prong also does not apply to Fraily because nearly all his work is done in California. (Fraily Decl. ¶¶ 7, 10-12).  Under New York law, the second prong is met only when "the nonresident tortfeasor expects or has reason to expect that his or her tortious activity in another State will have *direct* consequences in New York."  *LaMarca v. Pak-Mor Manufacturing Co.*, 95 N.Y.2d 210, 214 (2000) (emphasis in original).  This element "is intended to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere."  *Id.* at 215.  Fraily clearly had no such reasonable expectation when communicating with counsel for Plaintiff, a Rhode Island LLC.  (Cmpl. ¶¶ 4, 15, 21-22).  Plaintiff does not even allege any injury to Plaintiff occurring in New York.

Furthermore, the second prong of N.Y. C.P.L.R. § 302(a)(3) requires that Fraily "derive substantial revenue from interstate or international commerce" for the statute to be applicable.

N.Y. C.P.L.R. § 302(a)(3).   Frailly does not derive substantial revenue from interstate or international commerce as he is primarily engaged as an employee of Rivelle, which operates principally out of California.  (Frailly Decl. ¶ 10).  *See also* Cmpl. ¶ 26.  Plaintiff must set forth facts showing that Frailly "derive[s] substantial revenue independent of [his] roles in [the corporation]."  *Phoenix Ancient Art, S.A. v. J. Paul Getty Trust*, 2018 U.S. Dist. LEXIS 53270, *43-*44 (S.D.N.Y. Mar. 29, 2018). The Complaint makes no such allegation. Accordingly, N.Y. C.P.L.R. § 302(a)(3) is entirely inapplicable to Frailly.

### (d)　　§ 302(a)(4) Provides No Basis for Jurisdiction Because Frailly Does Not Own Property in New York

Frailly does not own property in New York.  (Frailly Decl. ¶ 3).  Accordingly, there is no specific personal jurisdiction over Frailly under any of the prongs of the New York Long Arm Statute.  Therefore, the Complaint must be dismissed as against Frailly due to a lack of personal jurisdiction.

### B.　　Due Process Considerations Bar the Exercise of Jurisdiction Over Frailly

Even where jurisdiction is proper under New York laws, the exercise of limited personal jurisdiction over a non-resident defendant by a New York court must in all cases be consistent with the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See International Shoe*, 326 U.S. at 316.  In *International Shoe*, the Supreme Court held that, in order to satisfy due process, the defendant must have such "minimum contacts" with the forum state that maintenance of the action and the exercise of personal jurisdiction over the defendant "does not offend 'traditional notions of fair play and justice.'"  *Id.*

As noted by the Supreme Court, "[t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472

(1985) (quoting *International Shoe Co.*, 326 U.S. at 319). Due process affords individuals "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King Corp.*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977)). Furthermore, the requisite "substantial connection" between the defendant and the forum state set forth in *Burger King Corp.*, 471 U.S. at 475, "must come about by an action of the defendant purposefully directed toward the forum State." *Asahi Metal Industry Co., Ltd. v. Sup. Ct. of California*, 480 U.S. 102, 112 (1987).

Under no construction of the facts at issue in the Complaint can the exercise of jurisdiction over Frailly in New York be found to comport with the "traditional notions of fair play and justice." *International Shoe*, 326 U.S. at 316. As detailed extensively above, Frailly has virtually no contact with New York whatsoever. Moreover, as discussed, the underlying dispute concerns statements made to Amazon (a Delaware corporation) by Rivelle (a California company) about Plaintiff (a Rhode Island LLC) on behalf of MGU (a Florida LLC). Plaintiff does not even attempt to explain how Frailly, a resident of California, could ever have anticipated being haled into a New York courtroom based solely on his role as a corporate officer of Rivelle. Therefore, the Complaint should be dismissed because any assertion of jurisdiction over Frailly under the facts of this case would violate his due process rights under the Fourteenth Amendment's Due Process Clause.

## CONCLUSION

In light of the foregoing, Defendants request that the Court grant this Motion, dismissing the Second Amended Complaint in its entirety for failure to state a claim and/or for lack of personal jurisdiction over the individually named defendant, and grant any other and further relief that the Court deems just and proper.

Dated: New York, New York
      August 19, 2020

11055387v.2

Yours, etc.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP

By:  _/s/ Stephen Barrett_____
　　　Stephen J. Barrett
　　　Jura C. Zibas
　　　150 East 42nd Street
　　　New York, New York 10017-5639
　　　(212) 490-3000
　　　Stephen.Barrett@wilsonelser.com
　　　Jura.Zibas@wilsonelser.com
　　　File No.: 12741.00101

　　　*Attorneys for Defendants Rivelle Products,*
　　　*Inc. and Timothy Michael Frailly*